Filed 12/13/23  Rodriguez v. Wong CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| FIONNA MARIE VALDES RODRIGUEZ,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>STEPHEN WONG,<br><br>        Defendant and Appellant. | A167484<br><br>(San Mateo County<br>Super. Ct. No. 21-CIV-05885) |

Defendant and appellant Stephen Wong (appellant) appeals from a restraining order granted in favor of petitioner and respondent Fionna Marie Valdes Rodriguez (respondent).  Because the evidence did not support a finding of future harassment, we reverse.

Appellant and respondent met at the San Francisco Police Academy in 2016 and both eventually ended up assigned to the San Francisco International Airport.  They were friends at work, and they often shared meals and exchanged text messages.  The text messages were often jokes, and sometimes the jokes were sexually charged.  Respondent sent some of these sexual jokes.

On October 16, 2021, appellant visited respondent while she worked alone at a cargo check point.  According to respondent's testimony, appellant

1

came up to her while she was sitting in a chair, put his leg between her legs, pushed her legs open with his leg, and said " 'Spread open for me.' " Respondent was disturbed by appellant's conduct; she explained in her testimony, "We joke around a lot, but this was like stepping over the line because this is a place that I work in. . . . [A]t the moment, I felt like he wasn't himself. He was somebody that I was friends with, like he crossed that line of touching me." Respondent stood up and "played it off and joked around with [appellant] and said, 'You know, you're acting crazy.' " She changed the topic and mentioned food that would be at her son's birthday party the next day, and appellant asked, " 'What kind of meat do you guys have?' " Appellant then "proceeded to make a joke about how, you know, it would be nice if my taco was bouncing on his sausage and just kind of those jokes that he made that [were] sexual in nature." Respondent "laughed it off and told him, 'Hey, you know, you need to simmer down;' " appellant replied, " 'only if I cum.' " Eventually, appellant left. Respondent testified the October 16 incident felt "different" than their previous joking.

The next day, appellant attended a birthday party for respondent's son. He acted like nothing had happened. The day after the party, respondent reported the October 16 incident to her supervisor, and thereafter appellant was summoned to his captain's office and informed of appellant's complaint. Appellant and respondent never had any communication after respondent made her complaint. Appellant testified, without any inconsistent testimony by respondent, that respondent never previously told him his sexualized joking was inappropriate or made her uncomfortable, and that he never made any attempt to contact respondent after learning of her complaint.

On November 2, 2021, respondent filed a "Request for Civil Harassment Restraining Orders" (Request). Respondent requested a

temporary restraining order (TRO) that was granted the same day. The contested hearing on respondent's Request was continued numerous times and ultimately took place on March 2, 2023. Respondent did not claim that appellant violated the TRO in any way before the hearing.

At the March 2023 hearing, respondent explained that she sought a restraining order because she knew appellant owned firearms and she was afraid he would become angry following her complaint. She did not testify to any threats by appellant, either express or implied. In her closing argument, she said she was requesting a restraining order because appellant "showed poor impulse control that night" and it "scare[d]" her and affected her feeling of "safety at work." She wanted to "continue with the restraining order for him to hear exactly how it has impacted me." Appellant argued the "isolated, single" incident in October 2021 "isn't enough to cause an injunction to be imposed."

In announcing its decision, the trial court stated, "I realize that there was a certain joking relationship that . . . [was] sometimes sexual in nature; but that was all through memes and through texts. The difference in this particular situation is there is now physical conduct involved, physical conduct that clearly from my observations of [respondent] when she was testifying made her afraid, made her upset and made her scared; and the Court could see that." The court continued, "This is . . . actually a physical act that violated her space, made her feel afraid; and then instead of just leaving and backing off he continues to sort of talk to her about things related to that type of sexual conduct and that type of sexual nature." In reference to the jokes appellant made during the incident, the court stated, "I mean, that just continues. So in a way that is a course of conduct." Though respondent

3

sought a three-year restraining order, the court granted one for 18 months, to expire in September 2024. The present appeal followed.

Code of Civil Procedure[1] section 527.6, subdivision (a)(1) provides that "[a] person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section." Section 527.6, subdivision (b)(3) defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." At a hearing on a request for a restraining order, the trial court "shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).) "An injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 496.) "We review the trial court's decision to grant the restraining order for substantial evidence." (*Id.* at p. 497.)

In the present case, respondent did not claim in her testimony and the trial court did not suggest in its findings that appellant had employed "unlawful violence" or made "a credible threat of violence." (§ 527.6, subd. (b)(3).) Instead, the trial court found the physical touching on October 16, 2021, combined with the sexualized joking immediately thereafter,

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

4

constituted a harassing course of conduct. Section 527.6 defines "[c]ourse of conduct" as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means . . . . Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (§ 527.6, subd. (b)(1).)

Appellant argues the trial court erred in concluding the single incident on October 16, 2021 constituted a "course of conduct," given that appellant did not previously know respondent objected to the sexualized joking and that there are no allegations of misconduct thereafter. Appellant also argues there is no evidence from which the court could find the harassment likely to recur in the future.

Appellant's conduct on October 16, 2021 was highly inappropriate and disturbing, and caused respondent substantial emotional distress. We need not resolve whether it should be treated as a "course of conduct" within the meaning of section 527.6, because we conclude there is no evidence in the record from which the trial court could find a likelihood of future harassment. As explained in *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 402 (*Russell*), "an injunction serves to prevent future injury and is not applicable to wrongs that have been completed. An injunction is authorized only when it appears that wrongful acts are likely to recur." Section 527.6, subdivision (i) incorporates this requirement, because "a court cannot issue an injunction unless it finds by clear and convincing evidence that 'unlawful harassment *exists*' [citation], not that it existed in the past." (*Russell*, at p. 403, italics added by *Russell* [quoting same language from prior version of statute].)

5

It is undisputed that respondent participated in sexualized joking with appellant prior to October 16, 2021, and respondent did not contradict appellant's testimony that she had never told him it made her uncomfortable. Of course, this does not excuse appellant's conduct, which, as respondent testified, plainly "crossed [the] line" and understandably was frightening and upsetting to her. However, it is also undisputed that, once appellant learned of respondent's complaint, he never again communicated with her before the contested hearing. Sixteen months passed between issuance of the TRO and that hearing, and appellant did not contact respondent during that period. Significantly, respondent did not claim in her testimony or closing argument that she feared the harassment would continue. Indeed, she said she wanted the restraining order so appellant would "hear exactly how it has impacted me," not out of concern about future harassment. During argument, appellant's counsel represented to the court that the parties no longer worked at the same location, and respondent answered "no" to the court's question, "Is there any chance that you could potentially come in contact with each other at work?" (Cf. *Harris v. Stampolis*, *supra*, 248 Cal.App.4th at p. 501 [distinguishing *Russell* based on the appellant's continuing behavior and the circumstance that "it was likely that [the parties] would have future interactions"].) Because there is no evidence to support a finding of a likelihood of future harassment, the trial court erred in issuing a restraining order.[2]

---

[2] Appellant testified to his desire to "respect [respondent's] privacy," and must understand that removal of the restraining order does not mean that he is welcome to re-initiate contact with respondent.

6

## DISPOSITION

The trial court's order is reversed. Costs on appeal are awarded to appellant.

SIMONS, ACTING P. J.

WE CONCUR:

BURNS, J.

CHOU, J.

A167484
*Valdes Rodriguez v. Wong*

8